## The State v. Byam.

1. **Criminal Law:** venue. The evidence held to show that the offense for which the defendant was indicted and convicted was committed in another county than that in which the venue was laid.

*Appeal from Delaware District Court.*

Friday, September 24.

An indictment was presented to the Delaware District Court charging the defendant with the crime of subornation of perjury. The defendant was tried and convicted, and he appeals.

*Peters & Heath* and *House & Dooley*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

Day, J.—The only testimony as to the circumstances of the offense charged is that of Samuel Hinton, the person alleged to have been suborned. His testimony is substantially as follows: "On the evening of the 23d day of September, 1873, Dr. Byam came to Dr. Eldridge's, where I was, and called me out of the room, and wanted to know if I wanted to rent a farm. He said he knew where I could rent a farm. I had previously talked to him about renting a farm, and he wanted to know if I wanted to rent a farm. He said if I would go with him that he would show me a farm that was for rent, and told me that he had some other business for me besides. I told him that I was engaged then, and so could not get away. He told me if I'd go with him he would make it more profitable for me than if I stayed there; he said he would make it five times as much as I was getting there. So I went into the house, and told them that Dr. Byam wanted me to go along with him, and as they didn't object to my going, I went out and got

The State v. Byam.

into the buggy, and we drove off. We drove that evening to Hopkinton, and stayed all night at Dr. Byam's.

The next day he got some dye at Livingston's, and had his whiskers dyed, and my moustache dyed, and about six in the forenoon we started, I think, for Andrew. The next day, September 24th, we drove on towards Andrew. It rained, and we talked about our undertaking to get down there. I don't remember just what was said, but directly we got to Canton, and when we got there he said he had some papers in his pocket, and that we should go up-stairs in the hotel there. We went up there, and he read the papers, and I wrote what he read. There was a table in the room, and he said for me to write, and I wrote with a lead pencil what he said to me as he read it.

In the morning we drove on towards Andrew. It rained most of the time from Canton to Andrew, and between Canton and Andrew he told me about E. C. Lewis, and about a deposition, and that he wanted me to swear to it, and that it was a mere matter of form. But I told him it would be forgery; and he said the man I should represent was only a straw man, and I couldn't be prosecuted for forgery, because there was no man to prosecute me. So that got around me, that settled it."

The witness further testifies that at Dr. Byam's request he went before one Thomas, a notary public in Andrew, and represented himself as E. C. Lewis, and falsely testified that he was the owner of certain land under a deed from Andrew Wilkinson, which he produced.

Thomas, the person before whom the deposition was taken, testifies positively that Hinton is not the person whose deposition was taken before him. The jury, however, believed the testimony of Hinton, and based their verdict upon it. Conceding the truthfulness of his testimony, it altogether fails to establish the commission in Delaware county of the offense charged. Canton and Andrew are both situated in Jackson county. According to the testimony of Hinton the

first suggestion to him that he should testify falsely was made between Canton and Andrew, in Jackson county. The false testimony, if given at all, was given in Andrew, in Jackson county. Under these circumstances the venue of the offense is in Jackson county. The Delaware District Court had no jurisdiction to try and determine the charge. This view of the case renders unnecessary a determination of the other errors urged.

REVERSED.